# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NECTOR STAVROPOULOS, individually and as the representative of a class of similarly situated persons, | ) ) ) ) | No. 13 C 5084 |
| Plaintiff, | ) ) | Judge Sara L. Ellis |
| v. | ) ) ) | |
| HEWLETT-PACKARD COMPANY, | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Nector Stavropoulos ("Stavropoulos") brings this putative nation-wide class action against Defendant Hewlett-Packard Company ("HP") for breach of express warranty, consumer deceptive practices, and unjust enrichment. In his Amended Complaint [20], Stavropoulos alleges HP sold him a fax machine that it knew had a defect rendering the machine unsafe and unusable. Stavropoulos states HP sold approximately 928,000 of these fax machines (models 1040 and 1050) even though HP knew they contained the same electrical components as certain prior models that were recalled. Stavropoulos' fax machine, along with the other 1040/1050 models, was the subject of a voluntary recall in 2012 based on some instances of the machines overheating and catching fire. HP brings this motion to dismiss [33] on the basis that all of Stavropoulos' claims fail. Because the Court finds Stavropoulos' breach of warranty claim is sufficiently pled, HP's motion is denied as to Count I. Because Stavropoulos does not plead the deceptive trade practices claim with specificity, HP's motion is granted as to Count II (deceptive trade practices) and Count III (unjust enrichment).

# BACKGROUND[1]

In or around 2010, Stavropoulos purchased an HP 1040 model fax machine at a retail location in DuPage County, Illinois, for $119.00 plus sales tax. Stavropoulos' 1040 model fax had a written one-year limited warranty ("Warranty"). That Warranty specifically guarantees to the end-user customer that the product will be free from defects in material and workmanship for a period of one year. Am. Compl. Ex. 2.[2] The Warranty further states:

> If HP receives, during the applicable warranty period, notice of a defect in any product, HP shall either repair or replace the defective Product, at HP's option.
>
> If HP is unable to repair or replace, as applicable, a defective product which is covered by HP's warranty, HP shall, within a reasonable time after being notified of the defect, refund the purchase price for the Product.
>
> HP shall have no obligation to repair, replace, or refund until the customer returns the defective product to HP.

*Id.* Between November 2004 and December 2011, HP sold approximately 928,000 such 1040 and 1050 model fax machines ("1040" and "1050," respectively) through retail and online outlets or through its own website.

The 1040 and 1050 were successor products to HP's 1010 and 1010xi fax machines ("1010" and "1010xi"), and used many of the same components in their construction and design, including the power supply and associated electrical components. On June 26, 2008, HP issued a recall and rebate for the 1010 and 1010xi models for a product failure and potential safety issue

---

[1] The facts in the background section are taken from Stavropoulos' Amended Complaint and are presumed true for the purpose of resolving HP's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

[2] The Warranty is attached to the Amended Complaint and may be considered by the Court on a motion to dismiss without converting the motion into one for summary judgment. *See Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 858 (7th Cir. 2002) (contract was part of the pleadings and therefore properly before the district court on a motion to dismiss in a breach of contract case).

related to a defect in the power supply that could cause the models to overheat and catch fire. The recall and rebate terms were a $100 rebate if consumers purchased a replacement model—a 1040 or 1050.

On January 31, 2012, HP issued a recall and rebate for the 1040s and 1050s, instructing consumers to stop using the machines, to disconnect the machines from electrical power sources, and to contact HP to participate in a rebate program. Stavropoulos alleges that the 1040/1050 recall was the result of the same defect that caused the 1010/1010xi recall and that HP knew the 1040/1050 contained the same defect that made the 1010/1010xi a fire hazard. The rebate program offered consumers between $19.00 and $100.00 to apply toward the purchase of other HP products. The designated HP replacement products all cost more than the applicable rebate amount.

Stavropoulos did not receive any mailing or communication from HP about the recall; HP posted information about the recall on its website. When Stavropoulos learned about the recall in early 2013, he disconnected his 1040 and has not used it since. Stavropoulos would not have purchased the 1040 if he had known that it posed a fire and burn risk.

Stavropoulos contacted HP by letter on June 16, 2013 and again on June 27, 2013, notifying HP that it had breached the warranty for his 1040 because he could no longer use the machine. HP responded that it would not cure the asserted breach and would not provide a full refund.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-

pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

## ANALYSIS

### I. Breach of Warranty Claim (Count I)

Stavropoulos' first claim is for HP's breach of the Warranty, brought under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1) (1975). The Magnuson-Moss Act is a federal statute that allows consumers to challenge deceptive warranty practices. *See Miller v. Willow Creek Homes, Inc.*, 249 F.3d 629, 630 (7th Cir. 2001). Because the Act does not set out the requirements for limited warranties, consumers may bring state law causes of action under

4

the Act and courts apply state law. *See Snyder v. Komfort Corp.*, No. 07 C 1335, 2008 WL 2952300, at *4 (N.D. Ill. Jul. 30, 2008) (*citing Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004)). Stavropoulos must meet the Rule 8 pleading standard for this breach of warranty claim by alleging sufficient factual matter, which if accepted as true, presents "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

HP argues Stavropoulos must show that he complied with the plain terms of the Warranty in order to sustain his breach of contract action, but that Stavropoulos does not even suggest he had any problem with his fax machine within the one-year warranty period. *See Snyder,* 2008 WL 2952300, at *4 (a written warranty is a contract and courts interpret contracts according to their plain meaning under Illinois law). Similarly, HP argues Stavropoulos does not state that he complied with his obligation under the Warranty to notify HP of the alleged defect within the coverage period. Stavropoulos cannot argue the Amended Complaint alleges that he complied with these Warranty terms. Indeed, his complaint states that he ceased using the fax machine when he became aware of the recall—three years after purchasing the machine—and he contacted HP in June 2013 regarding his desire for a refund.

Rather, Stavropoulos argues the Warranty's one-year term is unconscionable and unenforceable because "HP knew of the 1040's and 1050's defective and dangerous condition prior to sale." Am. Compl. ¶ 31. The Court agrees that the Amended Complaint contains allegations sufficient to support a plausible theory that HP knew the 1040/1050 models were defective before Stavropoulos' 2010 purchase. The Amended Complaint states the 1040/1050 models were the successor products to the 1010/1010xi models and used many of the same components in their construction and design, including the power supply and electrical components that were the subject of the 1010/1010xi recall. *Id.* ¶¶ 12–13. The Amended

Complaint also specifically alleges HP knew 1040/1050 models contained the same defect as the 1010/1010xi and that HP knew of the 1040/1050s' defective condition prior to their sale. *Id.* ¶¶ 31, 49. Stavropoulos further states HP knew of the defect in the 1040/1050 models as of June 26, 2008, the date the 1010/1010xi recall was publicly announced. *See id.* ¶¶ 13, 31. Unconscionability may be found if, during contracting, one party committed an act of bad faith such as concealment. *See Levey v. CitiMortgage, Inc.*, No. 07 C 2678, 2009 WL 2475222, at *4 (N.D. Ill. Aug. 10, 2009) (collecting cases on procedural unconscionability). Stavropoulos has sufficiently pled facts which, if proven, may support a finding of procedural unconscionability.

HP argues, however, that the Warranty cannot, as a matter of law, be unconscionable. HP cites to case law from other states, as well as what it alleges is Illinois policy, to argue that by finding the time limit to be unconscionable, the Court would be essentially compelling a manufacturer to insure against latent defects and this would render any warranty limitations meaningless. HP's position has strong support in the other states, particularly California, as evidenced by the cases cited at HP's Memo. pp. 4-8.[3] But the few Illinois cases the parties have brought to the Court's attention do not compel dismissal as a matter of law. For example, the parties' main Illinois case, *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950, 359 Ill. App. 3d 504, 296 Ill. Dec. 137 (2005), considers an unconscionability argument against an express warranty's time limitations, but dismisses the complaint because the plaintiff failed to allege that the defendant had knowledge before the sale. Similarly, *Razor v. Hyundai Motor America* considered an unconscionability challenge to the consequential damages exclusion in an express warranty. *See* 854 N.E.2d 607, 622–25, 222 Ill. 2d 75, 305 Ill. Dec. 15 (2006); *see also*

---

[3] The Court also notes the seeming conflict among the district courts of New Jersey on the question of unconscionability and express warranties. However, as those cases do not apply Illinois law and are persuasive authority at best, the Court will not weigh in on that disagreement. The parties have not pointed to any similar controversy among Illinois courts or within the Seventh Circuit.

*Sampler v. City Chevrolet Buick Geo, Inc.*, 10 F. Supp. 2d 934, 940–41 (N.D. Ill. 1998) (granting summary judgment on implied warranty of merchantability claim, acknowledging unconscionability as potentially applicable to express warranty). None of these cases stand for the general proposition urged by HP that courts in Illinois should disregard unconscionability arguments against express warranties. Because Stavropoulos has passed the pleadings threshold for unconscionability, and an unconscionability analysis is best made once the facts are further developed, the Court makes no determination on the legal merits of this theory at this time. *See* 810 Ill. Comp. Stat. 5/2-302(2) (1991) (when one party claims a contract or contract clause is unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination"); *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1030 (N.D. Ill. 2008) (same).

HP also challenges the pleadings on the basis that Stavropoulos has not complied with the Warranty because he did not give proper notice of the defect during the one-year time limit. Under Illinois law, the notice requirement for a breach of warranty claim is satisfied "only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590, 174 Ill. 2d 482, 221 Ill. Dec. 389 (1997) (holding manufacturer's general awareness of safety problems insufficient notice). Stavropoulos states he sent two letters to HP in June 2013 alerting HP of the breach. Am. Compl. ¶ 35. He also pleads unconscionability generally. *See id.* ¶ 31 ("[A]ny limitation on Stavropoulos' and the putative class' contractual remedies for the defective condition of the 1040 and 1050 is unconscionable and unenforceable."). Reading the Amended Complaint in the light most favorable to Stavropoulos, as the Court must at this stage, the Court finds that Stavropoulos has presented sufficient facts that, if he prevails in striking the time limit through

his unconscionability theory, could support notice of this particular machine's alleged defect. *See AnchorBank, FSB*, 649 F.3d at 614. Thus, HP's motion to dismiss Count I of the Amended Complaint is denied.

## II.     Illinois Consumer Fraud and Deceptive Business Practices Act Claim (Count II)

HP challenges Stavropoulos' claim that it knowingly concealed and failed to disclose the 1040/1050 defect in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2 (1991). To state a claim under ICFA, Stavropoulos must allege: (1) a deceptive act or practice by HP; (2) HP intended Stavropoulos rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) HP caused Stavropoulos actual damage because of the deception. *See Connick*, 675 N.E.2d at 593. Claims under ICFA sound in fraud and therefore must be pled with particularity under Rule 9(b). *Id.*

HP first argues Stavropoulos cannot allege any actual damage because the fax machine functioned properly for three years and therefore Stavropoulos received the benefit of his bargain. Stavropoulos counters that the diminishment of the value of the fax machine is a compensable injury and that the total diminishment of the fax machine's value (because it was unusable after the recall) constitutes actual damages. Courts have allowed ICFA complaints to go forward on claims for the diminished value of an allegedly defective product. *See Muir v. Playtex Prods.*, --- F. Supp. 2d ----, 2013 WL 5941067, at *5 (N.D. Ill. Nov. 6, 2013) (collecting cases). Unlike the case cited by HP where the plaintiff alleged only anticipated software problems not any actual malfunction, *see Yu v. IBM Corp.*, 732 N.E.2d 1173, 1177–78, 314 Ill. App. 3d 892, 247 Ill. Dec. 841 (2000), Stavropoulos has stated that the product is currently

8

unusable due to the recall. How his prior uninterrupted use of the product will be balanced against the Amended Complaint's request for a full refund is a damages question for a later date.

HP also contends that Stavropoulos cannot sustain an ICFA claim based on a breach of contract theory. The Illinois Supreme Court has explained that the breach of a contractual promise, without more, is not actionable under ICFA because that statute was not designed to allow a consumer plaintiff to "convert any suit for breach of contract into a consumer fraud action . . . . or to supplement every breach of contract action with a redundant remedy." *Avery v. State Farm Mutual Auto. Ins. Co.*, 835 N.E.2d 801, 844, 216 Ill. 2d 100, 296 Ill. Dec. 448 (2005) (quotation and citation omitted). Stavropoulos states HP misunderstands the nature of his ICFA claim—the deceptive practice alleged is the knowing withholding of material facts about the defect, separate and apart from the breach of warranty claim. This is a plausible argument based on Count II as currently pled, therefore this attempt to dismiss Stavropoulos' ICFA claim based on *Avery* is not well-taken at this time.[4]

Additionally, HP argues that Stavropoulos has not sufficiently pled the details of HP's alleged deceptive conduct. Under Rule 9(b), claims sounding in fraud must allege the "who, what, when, where, and how" of the fraud. *AnchorBank*, 649 F.3d at 615. Critically for Stavropoulos, HP asserts that under Illinois law, a plaintiff alleging an omission-based deception must still point to the communication in which the omission occurred to state a viable ICFA claim. Indeed, the Illinois Supreme Court has recently clarified that:

---

[4] HP also notes that, to the extent Stavropoulos bases his ICFA claim on arguments that the recall was insufficient, it is barred as a matter of law because the recall was authorized and approved by the Consumer Product Safety Commission. ICFA does specifically exempt "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. 505/10b(1) (1996). With this briefing, Stavropoulos has abandoned any ICFA theory based on the recall, stating his claim is "premised on HP's knowing concealment that the 1040 was a worthless safety hazard" and specifically disavowing any allegations that the voluntary recall was insufficient. Resp. at 21.

9

> [T]o maintain an action under [ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant. If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause. . . . A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant.

*De Bouse v. Bayer*, 922 N.E.2d 309, 316, 235 Ill. 2d 544, 337 Ill. Dec. 186 (2009).[5] Stavropoulos does not allege any such communication in the Amended Complaint. HP notes that in his original complaint, Stavropoulos did allege he relied on HP's advertising. Stavropoulos' briefing does not indicate why that allegation was removed from the Amended Complaint. But that statement alone, without additional detail, would not meet the Rule 9(b) specificity standard. *See Ciszewski v. Denny's Corp.*, No. 09 C 5355, 2010 WL 2220584, at *2 (N.D. Ill. June 2, 2010) (dismissing ICFA claim for failure to specify contents of advertisements); *Camasta v. Jos. A. Banks Clothiers, Inc.*, No. 12 C 7782, 2013 WL 3866507, at *3 (N.D. Ill. July 25, 2013) (same).

HP's motion to dismiss Stavropoulos' ICFA claim is therefore granted.

## III. Unjust Enrichment (Count III)

HP also seeks dismissal of Stavropoulos' unjust enrichment claim. To state a claim for unjust enrichment, Stavropoulos must allege HP has unjustly retained a benefit to his detriment, and that HP's retention of that benefit "violates the fundamental principles of justice, equity, and good conscience." *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E. 2d 672, 679, 131 Ill. 2d 145, 137 Ill. Dec. 19 (1989).

HP argues Stavropoulos received the full benefit of the bargain because the fax machine worked for nearly three years before the recall and HP was not unjustly enriched because

---

[5] The cases Stavropoulos relies on to argue otherwise are either specifically distinguished by *De Bouse* or pre-date the Illinois Supreme Court's determination of this exact issue.

Stavropoulos purchased his fax machine at a retailer, not directly from HP. HP further argues that the Warranty governs the parties' relationship, therefore as a matter of law Stavropoulos cannot sustain an unjust enrichment claim. In addition, HP contends that, to the extent the Court dismisses Stavropoulos' ICFA claim, it should dismiss his unjust enrichment claim.

As an initial matter, unjust enrichment claims may be sustained against a manufacturer when the payment was made to a retailer. *See Wiegel v. Stork Craft Mfg., Inc.*, 780 F. Supp. 2d 691, 695 (N.D. Ill. 2011) (allowing unjust enrichment claim against manufacturer when product purchased from third-party retailer); *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 853 (N.D. Ill. 2006) ("[A]n unjust enrichment claim may be premised on an indirect conferral of benefits."). Stavropoulos has alleged that HP accepted and benefited from the purchase price of the machine and that it was unjustly enriched by retaining that full purchase price. Am. Compl. ¶¶ 63, 65. That is sufficient here.

However, it is true that, under Illinois law, "[b]ecause unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177, 153 Ill.2d 473, 180 Ill. Dec. 271 (1992) (quotation and citation omitted). Therefore, Stavropoulos cannot allege an unjust enrichment count based on his breach of warranty claim. Stavropoulos argues that his unjust enrichment theory is not based on the breach of the warranty obligations, but rather on HP's pre-sale deceptive concealment of the defect. Resp. at 23. If so, this claim must also be dismissed, since it is based on the conduct underlying the ICFA claim, which has not been sufficiently pled. *See Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this

11

related claim—and, of course, unjust enrichment will stand or fall with the related claim."). HP's motion to dismiss Stavropoulos' unjust enrichment claim is therefore granted.

## CONCLUSION

For the foregoing reasons, HP's motion to dismiss [33] is granted in part and denied in part. The Motion is denied as to Count I. The Motion is granted as to Counts II and III, which are dismissed without prejudice. Stavropoulos may amend Counts II and III within fourteen days of the entry of this Order or those counts will be dismissed with prejudice.

Dated: June 9, 2014

_____
SARA L. ELLIS
United States District Judge