# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NECTOR STAVROPOULOS, individually and as the representative of a class of similarly situated persons, | ) ) ) ) | No. 13 C 5084 |
| Plaintiff, | ) ) | Judge Sara L. Ellis |
| v. | ) ) ) | |
| HEWLETT-PACKARD COMPANY, | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

After this Court's June 9, 2014 Opinion and Order dismissing Count II (Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")) and Count III (unjust enrichment) of his Amended Complaint, Plaintiff Nector Stavropoulos filed a series of amended complaints in an attempt to successfully re-plead these claims. Defendant Hewlett-Packard Company ("HP") now moves to dismiss these two counts from the Fourth Amended Complaint ("Complaint"). Because Stavropoulos has sufficiently pleaded an ICFA deceptive practices claim, HP's motion is denied as it relates to that count. Stavropoulos has not successfully pleaded an ICFA unfair practices theory, however, and he cannot pursue that theory under Count II. HP's attempt to dismiss Stavropoulos' "generally deceptive" allegations is denied. Stavropoulos may plead his unjust enrichment claim in the alternative; thus, HP's motion to dismiss that claim is denied and Stavropoulos' request for disgorgement of profits can stand.

# BACKGROUND[1]

For the purposes of this second motion to dismiss, the Court presumes familiarity with the facts as summarized in this Court's June 9, 2014 Opinion and Order and will only discuss the relevant additions to Stavropoulos' Complaint.

Stavropoulos now states that HP should have included in its advertising, including its online product listing and the packaging of the 1040 and 1050 fax machines, "a fire hazard warning of the type approved by the CPSC and recommended by the American National Standards Institute." Compl. ¶ 50. HP failed to disclose, "on the product packaging, advertising or elsewhere that (i) the 1040 and 1050 was defective, dangerous, and a fire hazard; and (ii) the 1040 and 1050 contained the same power supply defect as the 1010 and 1010xi." *Id.* ¶ 51. By not including such warnings, HP "communicated to Stavropoulos and members of the putative class that the 1040 and 1050 were not fire hazards." *Id.* ¶ 50. Further, HP intended that Stavropoulos and the class rely on "its suppression of the defective and dangerous condition of the 1040 and 1050 in making their choice to purchase those products." *Id.* ¶ 52. Stavropoulos viewed the packaging of the 1040 fax machine prior to his purchase. *Id.* ¶ 50. He states that he would not have purchased the 1040 fax machine if he knew it caused a risk of fire and burns. *Id.* ¶ 20. Stavropoulos further contends that no reasonable consumer would have purchased these models of fax machine if he or she had known the products were defective and a fire hazard. *Id.* ¶ 53.

Also, throughout the Complaint Stavropoulos has added claims that the HP model 1040 and 1050 fax machines were "generally defective." *See, e.g.*, *Id.* ¶ 32 (Count I), ¶ 50 (Count II), ¶ 65 (Count III).

---

[1] The facts in the background section are taken from Stavropoulos' Fourth Amended Complaint and are presumed true for the purpose of resolving HP's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Finally, Stavropoulos includes a request for "disgorgement of profits unjustly retained by HP in connection with its sale of 1040s and 1050s" in the Count III (unjust enrichment) plea for damages. *Id*. at 19.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—

in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

## ANALYSIS

**I.     ICFA Claim (Count II)**

   **A.     Deceptive Packaging**

The Court initially dismissed Stavropoulos' ICFA claim because he did not allege that he received any kind of communication from HP and an ICFA claim requires the consumer receive some communication or advertising from the defendant. June 9, 2014 Opinion at 10. The Complaint now states that HP's advertising, and specifically, the packaging of the 1040 model, was deceptive because it did not include "a fire hazard warning of the type approved by the CPSC and recommended by the American National Standards Institute." Compl. ¶ 50. HP argues that Stavropoulos does not allege that he was actually deceived by this omission—that he actually read or considered the information on the packaging before making his purchasing decision—and therefore he fails to state an ICFA claim under the Rule 9(b) fraud pleading standard.

To maintain an ICFA deceptive practices claim, Stavropoulos must allege: (1) a deceptive act or practice by HP, (2) that HP intended Stavropoulos rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, and (4) HP caused Stavropoulos actual damage because of the deception. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593, 174 Ill. 2d 482, 221 Ill. Dec. 389 (1997). While a claim under ICFA does not require Stavropoulos to allege he relied on the asserted deceptive omission, s*ee Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001) (collecting cases), an ICFA deceptive practices claim must meet the higher, Rule 9(b) pleading standard because it

4

sounds in fraud. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, No. 12 C 7782, 2012 WL 3866507, at *3 (N.D. Ill. July 25, 2013), *aff'd*, 761 F.3d 732 (7th Cir. 2014).

With his latest Complaint, Stavropoulos has pleaded the bare bones of an ICFA deceptive practices claim. He asserts that HP failed to include a fire hazard warning on the 1040 and 1050 fax machine models and that HP intended its consumers, including Stavropoulos, to rely on the lack of a hazard warning when purchasing the machine.[2] Compl. ¶¶ 51–52. Stavropoulos is specific enough regarding the missing warning that this case is distinguishable from other recent cases where plaintiffs did not describe the contents of the communications. *See, e.g., Camasta*, 2012 WL 3866507, at *3 (plaintiff failed to identify the content of advertisement viewed or any context for allegedly fraudulent sales practices); *Ciszewski v. Denny's Corp.*, No. 09 C 5355, 2010 WL 2220584, at *2 (N.D. Ill. June 2, 2010) (failing to allege with any specificity the contents of communications). Stavropoulos further states that he viewed the 1040 fax machine packaging before the purchase and would not have bought the 1040 if he knew it posed a risk of fire and burns. Compl. ¶¶ 20, 50. Unlike this Court's recent decision in *Ibarrola v. Kind, LLC*, Stavropoulos has plausibly alleged that he, or any reasonable person, would not have purchased these fax machines if the packaging had included the warning he suggests. *See* No. 13 C 50377, 2014 WL 3509790, at *5 (N.D. Ill. July 14, 2014). Although Stavropoulos does not allege that he was deceived in so many words, he does plead enough to support a plausible connection between the purported omission, his viewing of the packaging, and his purchase of the product. And while Stavropoulos cannot recall the specific date or place of purchase, his allegation of "in

---

[2] HP argues that a warning requested by Stavropoulos requires a finding of flammability or combustibility under 16 C.F.R. § 1500.3(c)(6)(ii) and because Stavropoulos does not allege that his fax machine was flammable, that sort of warning could not be required. Stavropoulos does not pin the requested warning on any particular piece of legislation, *see* Compl. ¶ 50 ("a fire hazard warning of the type approved by the CPSC and recommended by the American National Standards Institute"), likely in order to avoid a preemption challenge. The applicability of any particular act or regulation is not properly before the Court at this time.

or about 2010" and a generalized location for the purchase are sufficient to meet the Rule 9(b) pleading requirements. *See Bohn v. Boiron, Inc.*, No. 11 C 8704, 2013 WL 3975126, at *10 (N.D. Ill. Aug. 1, 2013) (refusing to dismiss ICFA claim when purchase alleged to have been made within three-year window). Taken together, Stavropoulos' allegations that HP failed to properly label the 1040 and 1050 fax machines as fire hazards sufficiently state a deceptive communication claim. *See Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 916–17 (N.D. Ill. 2013) (failure to disclose potentially negative side-effects on packaging); *Lipton v. Chattem, Inc.*, No. 11 C 2952, 2012 WL 1192083, at *5 (N.D. Ill. Apr. 10, 2012) (same).

### B. Unfair Practices Theory

In response to HP's motion, Stavropoulos argues a new, alternative theory that his ICFA count is an unfair, rather than deceptive, practices claim. Resp. at 6–8. A commercial practice is unfair under ICFA if it: (1) violates public policy, (2) is "so oppressive that the consumer has little choice but to submit," and (3) causes substantial injury to the consumer. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). However, the claimed unfair practice need not meet all three criteria. *Id.* Additionally, an ICFA unfair practices claim does not have to meet the Rule 9(b) higher standard because it is not fraud-based. *See Camasta*, 761 F.3d at 737.

While generally a plaintiff "may allege that conduct is unfair under ICFA without alleging that the conduct is deceptive," *see Siegel*, 612 F.3d at 935, Stavropoulos' complaint is plainly based on allegedly deceptive, rather than unfair or unscrupulous, conduct. *See* Compl. at 12 (Count II (ICFA) subtitle: "HP's Deceptive Practices"). Stavropoulos now seeks to characterize this claim as one for unfair practices without citing a single phrase in the complaint to support this theory. But, as HP argues, the entire complaint is premised on HP's alleged concealment of a known fire hazard. *See, e.g.*, Compl. ¶ 1 ("HP sold the 1040 and 1050 to

6

Stavropoulos . . . knowing that the machines had no value because they contained a design defect"); ¶ 2 ("HP . . . is engaged in deceptive conduct."); ¶ 3 (seeking relief for "HP's deceptive practices"). The Complaint does not state an unfair practices claim. *See Camasta*, 761 F.3d at 737 (addition of "unfairness" language did not change ICFA claim "entirely grounded in fraud" to unfairness claim); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011) (finding pleading was premised on intentional concealment and therefore appropriately interpreted as deceptive practices claim subject to Rule 9(b), not unfair practices claim subject to Rule 8).

However, because the Court has found Stavropoulos has sufficiently pleaded a deceptive practices claim, his failure to plead an unfair practices claim will not result in the dismissal of Count II.

## II. Generally Defective Allegations

HP also argues that Stavropoulos has amended his complaint to allege the 1040 and 1050 fax machines were generally defective—i.e. that the defects include, but are not limited to, the power supply identified in the prior complaints—in an effort to expand the scope of discovery. The new language regarding the generally defective nature of the machines appears throughout the Complaint. *See, e.g.*, ¶ 32 (Count I), ¶ 50 (Count II), ¶ 65 (Count III). HP argues that Stavropoulos does not plead facts sufficient to support a claim of generally defective machines. HP also argues specifically that the ICFA claim fails because Stavropoulos "has not alleged HP's pre-sale knowledge of any alleged defect other than the power supply at all, let alone with the requisite level of specificity to meet Rule 9(b)." Memo. at 9. Stavropoulos does not address this argument in his response.

7

HP's argument is not well-developed and seems to be aiming a Rule 12(b)(6) argument against Stavropoulos' complaint wherever it includes "general allegations." The Court held above that Stavropoulos sufficiently pleaded his deceptive practices ICFA claim. The inclusion of language that the machines were generally defective does not make Stavropoulos' claims about the purportedly required warnings any less specific. The attempt to dismiss the breach of warranty claim on these grounds is similarly unavailing. The Court found the warranty claim to be sufficiently pleaded in its June 9, 2014 Opinion. The warranty claim specifically incorporates the Complaint's factual allegations that center on the power supply and associated electrical components. *See* Compl. ¶¶ 12, 26. Stavropoulos does not allege that the 1040/1050 models had a defect "beyond the power supply," as HP characterizes the Complaint, *see* Memo. at 8, and therefore does not need to allege any new facts. If HP believes that the scope of Stavropoulos' requested discovery is too broad, the proper recourse is a motion to compel.

To the extent HP is moving to dismiss Stavropoulos' "generally defective" allegations, the motion is denied.

### III.     Unjust Enrichment (Count III)

HP seeks dismissal of Stavropoulos' unjust enrichment claim on two grounds. First, HP argues that, because the ICFA claim fails, the unjust enrichment claim based on the same conduct must fail. Because the Court finds the ICFA claim sufficiently pleaded, HP's argument is now moot.

Second, HP argues that, because a specific contract—the Warranty—governs the relationship of the parties, under Illinois law, Stavropoulos cannot also maintain a quasi-contractual claim of unjust enrichment. Stavropoulos argues that it is premature to dismiss this

8

claim because the scope of the warranty has not yet been developed and he may plead unjust enrichment in the alternative to the breach of contract claim.

While the cases cited by Stavropoulos do note, in dicta, that the existence of a contract "does not automatically bar an unjust enrichment claim," *see Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 856 (N.D. Ill. 2006), a quasi-contractual claim cannot be sustained when an express contract governs the relationship of the parties. *See id.* at 855 (citing *People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 153 Ill. 2d 473, 180 Ill. Dec. 271 (1992)). Contrary to HP's assertion, however, the Court has not made any finding as to the existence of a valid contract. *See* Reply at 7 ("[w]hether a valid contract exists is now a settled issue"). Rather, the Court held Stavropoulos adequately pleaded an unconscionability challenge to the warranty. June 9, 2014 Opinion at 7–8. If Stavropoulos is successful in attacking the express warranty through unconscionability, there is the possibility his unjust enrichment claim may proceed. Because the Court has not determined the scope of the warranty at issue, it would be premature to dismiss the unjust enrichment claim on this basis. *See Muehlbauer*, 431 F. Supp. 2d at 855; *Saltzman v. Pella Corp.*, No. 06 C 4481, 2007 WL 844883, at *6 (N.D. Ill. Mar. 20, 2007).

Stavropoulos should have pleaded his unjust enrichment claim in the alternative. Pleading in the alternative is not simply a matter of re-naming the counts in the complaint; Stavropoulos should have "allege[d] the absence of a contract." *See N. Trust Co. v. MS Sec. Serv., Inc.*, No. 05 C 3370 & 05 C 3373, 2006 WL 695668, at *13 (N.D. Ill. Mar. 15, 2006). However, even though Stavropoulos does not call this claim an alternative theory, this Count does not incorporate the breach of contract allegations and may not exist as a matter of law if an express contract governs the parties' relationship. *See* Compl. ¶ 62 (specifically incorporating only Paragraphs 1–25 only); *see Telefonix, Inc. v. Response Eng'g, Inc.*, 12 C 4362, 2012 WL

9

5499437, at *6 (Nov. 13, 2012) ("Defendants may plead breach of contract in one count and quasi-contractual claims in others, but they may not include allegations of an express contract, which governs the relationship of the parties, in quasi-contractual claims." (alterations omitted) (quotation marks omitted)). This claim is therefore pleaded in the alternative in substance, if not specifically in form, and the Court will not dismiss it.

## IV. Disgorgement

Stavropoulos' unjust enrichment count includes a request for "disgorgement of profits unjustly retained by HP in connection with the sale of 1040s and 1050s." Compl. at 19. HP seeks to strike this remedy because is not available under the Warranty Act and ICFA, and because Stavropoulos has not sufficiently pleaded an unjust enrichment claim. Stavropoulos does not include this request for disgorgement in the warranty or ICFA counts, and, as discussed above, Stavropoulos has sufficiently pled the unjust enrichment claim in the alternative.

As for including this request in Count III, Stavropoulos cites two cases for the proposition that Illinois courts recognize unjust enrichment as an appropriate equitable remedy. Those cases discuss other common law theories (breach of fiduciary duty and quantum meruit) and so are not directly applicable to unjust enrichment. However, disgorgement of profits is an appropriate remedy for an unjust enrichment claim. *See Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) ("Unjust enrichment does not seek to compensate a plaintiff for loss or damages suffered but seeks to disgorge a benefit that the defendant unjustly retains." (alteration omitted) (quotation marks omitted)). Because Stavropoulos has successfully pleaded an unjust enrichment count, he may continue with his request for disgorgement. HP's motion is denied.

## CONCLUSION

For the foregoing reasons, HP's motion to dismiss [83] is denied. HP's motion to dismiss filed in response to Stavropoulos' Second Amended Complaint [70] is terminated as moot.

Dated: December 17, 2014

_____
SARA L. ELLIS
United States District Judge